**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KEVIN FERRER, individually and on behalf of all others similarly situated,<br><br>                           Plaintiff,<br><br>   v.<br><br>SHARKNINJA OPERATING LLC,<br><br>                        Defendant. | Case No.: 25-cv-00535-DMS-KSC<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT AND REQUEST FOR JUDICIAL NOTICE**<br><br>**[ECF No. 12]** |

Pending before the Court is Defendant's motion to dismiss Plaintiff's Second Amended Class Action Complaint ("SAC"). (Mot., ECF No. 12.) Defendant also requests that the Court take judicial notice of a webpage on Amazon.com ("Amazon"). (*Id.* at 9 n.1.) Plaintiff filed a response in opposition, (Opp'n, ECF No. 13), and Defendant filed a reply. (Reply, ECF No. 14.) Plaintiff also filed a notice of supplemental authority in support of his Opposition. (Notice, ECF No. 16.) The matter is suitable for resolution without oral argument pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 15.) For the following reasons, the Court denies Defendant's motion to dismiss and request for judicial notice.

## I.    BACKGROUND

Defendant manufactures and sells various counter-top kitchen appliances, such as blenders, air fryers, ovens, food processors, multicookers, grills, toasts, waffle makers, espresso machines, coffee and tea makers, juicers, carbonated drink makers, flavored water drops, slush machines, and ice cream makers ("Countertop Appliances"). (SAC, ECF No. 11, ¶ 25.)  On December 14, 2023, Plaintiff purchased Defendant's Ninja model BL610 Countertop Blender ("Product") from Amazon.  (*Id.* ¶ 12.)  Amazon shipped the Product on December 15, 2023, and delivered the Product to Plaintiff's home in Chula Vista, California on December 20, 2023.  (*Id.*)

Prior to completing his purchase, Amazon required Plaintiff to provide the specific shipping address for the Product.  (*Id.* ¶ 13.)  Plaintiff provided his address with the understanding and expectation that Amazon was required to deliver the product to his home.  (*Id.*)  The purchase contract stated and required Amazon to deliver the Product to Plaintiff's home, (*id.*), and Amazon memorialized the agreement "showing the specifically required delivery address of Plaintiff's home in Chula Vista."  (*Id.*)  Amazon did not specify that it would deliver the Product to any other carrier and "did not specify that [its] responsibility, in connection with the sale, was anything other than delivery to Plaintiff's home address."  (*Id.* ¶ 14.)

Plaintiff expected that the Product's warranty would begin once he received the Product.  (*Id.* ¶ 16.)  However, the Product's warranty states that Defendant "warrants that the unit shall be free from defects in material and workmanship for a period of one (1) year from the ***date of purchase***."  (*Id.* ¶ 17 (emphasis in original).)  Plaintiff alleges that all of Defendant's Countertop Appliances are subject to the same warranty (i.e., beginning on the date of purchase, rather than date of delivery) in violation of California law.  (*Id.* ¶¶ 24, 26–27.)  Plaintiff alleges that Defendant's "uniform warranty policy" is a "strategic decision" to reduce the effective warranty periods for "all purchasers who receive delivery of their products" in California.  (*Id.* ¶¶ 28–29, 32.)

25-cv-00535-DMS-KSC

Plaintiff alleges violations of California's (1) Song Beverly Consumer Warranty Act ("SBA"), Cal. Civ. Code § 1790 *et seq.*; and (2) Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*  Plaintiff brings this action on behalf of himself and "all others similarly situated" ("Class").  (*Id.* ¶ 34.)  The Class is defined as:

> All persons within California who purchased one or more of Defendant's model BL610 blenders between July 1, 2023, through the date of class certification, which were delivered after the date of purchase, and which were purchased new (not used) and accompanied by an express warranty that commenced on the date of purchase and not the date of delivery. (the "Class")[;]

> All persons within California who purchased one or more of Defendant's blenders (excluding the model BL610 blender) between July 1, 2023, through the date of class certification, which were delivered after the date of purchase, and which were purchase[d] new (not used) and accompanied by an express warranty that commenced on the date of purchase and not the date of delivery. (the "Blender Class")[;] and

> All persons within California who purchased one or more of Defendant's Countertop Appliances between July 1, 2023, through the date of class certification, which were delivered after the date of purchase, and which were purchase[d] new (not used) and were accompanied by an express warranty that commenced on the date of purchase and not the date of delivery. (the "Countertop Appliance Class")[.]

(*Id.* ¶ 35.)  Plaintiff seeks damages and injunctive relief.  Defendant now moves to dismiss the entire SAC under Federal Rule of Civil Procedure 12(b)(1) challenging Plaintiff's standing to bring claims under Article III, the SBA and UCL, and on behalf of putative class members for products he did not purchase.  Defendant also moves to dismiss the SBA and UCL claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## II.    LEGAL STANDARD

### A. Rule 12(b)(1)

"Under Rule 12(b)(1), a party may move to dismiss a claim based on lack of subject matter jurisdiction, including the absence of standing." *Sywula v. Teleport Mobility, Inc.*, 652 F. Supp. 3d 1195, 1208 (S.D. Cal. 2023) (citing *Chandler v. State Farm Mut. Auto.*

25-cv-00535-DMS-KSC

*Ins. Co.*, 598 F.3d 1115, 1123 (9th Cir. 2010)).  A Rule 12(b)(1) challenge can be either facial or factual.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "A 'facial' attack accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'"  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air for Everyone*, 373 F.3d at 1039).  When a motion to dismiss makes a facial challenge, the court assumes the factual allegations in the complaint are true and draws all reasonable inferences in the plaintiff's favor.  *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).  "[T]he court is limited to the four corners of the pleading in determining whether it has jurisdiction over the matter."  *Sywula*, 652 F. Supp. 3d at 1208 (citing *Thornhill Publ'g Co. v. Gen. Tel. Elec.*, 594 F.2d 730, 733 (9th Cir. 1979)).  "To survive a Rule 12(b)(1) facial challenge, 'the plaintiff must clearly . . . allege facts demonstrating each element [of standing].'"  *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

### B. Rule 12(b)(6)

Under Rule 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  If Plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible," the complaint "must be dismissed."  *Id.* at 570.

25-cv-00535-DMS-KSC

In reviewing the plausibility of a complaint on a motion to dismiss, a court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But courts are not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

### III.    DISCUSSION

**A. Standing**

1. <u>Article III Standing—Products Purchased by Plaintiff</u>

Article III of the Constitution requires courts to adjudicate only actual cases or controversies. *See* U.S. Const. art. III, § 2, cl. 1. "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013). To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Federal courts have subject matter jurisdiction where there is "the irreducible constitutional minimum of standing." *Tevis v. Dyson Direct, Inc.*, No. 25-cv-00821, 2025 WL 2142939, at *2–3 (S.D. Cal. July 29, 2025) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III." *TransUnion LLC*, 594 U.S. at 423. Defendant focuses on the first element and argues Plaintiff fails to allege a sufficient injury in fact. (Mot. 3–5.)

Specifically, Defendant argues "Plaintiff does not allege that the blender he purchased suffered from any defect covered by the warranty, that he sought warranty services for any defect, or that he was denied warranty services as a result of the allegedly premature expiration of the warranty." (*Id.* at 4.) Defendant further argues that Plaintiff

fails to "reasonably allege[] that the value of the warranty has somehow diminished given that the duration of the warranty would have no particularized impact on Plaintiff unless and until he attempted to invoke it." (*Id.*) Essentially, Defendant argues Plaintiff's injury is simply that Defendant violated the SBA, which is a "technical" or "legal" violation insufficient to confer standing. (*See id.* at 4–5.)

However, Plaintiff does not purport to state a warranty claim. Instead, Plaintiff argues that Defendant "shorted" Plaintiff's warranty under the law, effectively diminishing the value of the warranty and the Product's overall value, which constitutes an economic harm. (Opp'n 6–7.) Plaintiff finds support under the SBA, which provides that a "manufacturer, distributor, or retail seller shall not make an express warranty with respect to a consumer good that commences earlier than the date of delivery of the good." Cal. Civ. Code § 1793.01. Plaintiff alleges Defendant has a uniform warranty policy where warranties are all commenced on the date of purchase, rather than the date of delivery or receipt of the products, in violation of the SBA. (SAC ¶¶ 28, 52.)

To have standing under Article III Plaintiff need not allege that the Product he purchased suffered from a defect covered by the warranty, that he sought warranty services for a defect, or that he was denied warranty services as a result of premature expiration of the warranty. Plaintiff cites to cases involving virtual identical facts and finding that "shorting" a warranty constitutes economic injury. *See, e.g.*, *Itzhak v. Keurig Dr Pepper Inc.*, No. 25-cv-00235, 2025 WL 2020029, at *5 (S.D. Cal. June 11, 2025) (stating "[w]hile the difference in value between a coffeemaker with a 365-day warranty versus a coffeemaker with a 363-day warranty may be very small," there is a difference in economic value); *see also Kalcheim v. Apple Inc.*, No. 16-cv-9324, 2017 WL 3443208, at *2 (C.D. Cal. Aug. 10, 2017) (similar); *Tevis*, 2025 WL 2142939, at *2–3 (similar). Defendant points to other district courts that have reached the opposite conclusion. *See, e.g.*, *Kolar v. Nespresso USA, Inc.*, No. CV 24-11235, 2025 WL 1717279, at *3 (C.D. Cal. June 13, 2025) (finding plaintiff lacked standing); *Borowsky v. Hamilton Beach Brands, Inc.*, 788 F. Supp. 3d 1092, 1096–97 (N.D. Cal. June 27, 2025) (finding nearly identical allegations

25-cv-00535-DMS-KSC

"too speculative to establish standing" as the plaintiff "has not alleged her appliance is broken or malfunctioned" and "has not alleged she submitted any claim under the warranty that was denied"). However, this Court is persuaded by the reasoning in *Kalcheim*, *Itzhak*, and *Tevis*. Accordingly, the Court finds Plaintiff's alleged injury is sufficient for Article III standing and denies Defendant's motion to dismiss on this ground.

2. <u>Article III Standing—Products Not Purchased by Plaintiff</u>

Defendant also argues that "Plaintiff lacks Article III standing with respect to products" Plaintiff did not personally purchase. (Mot. 6.) The parties agree that the Ninth Circuit has not determined whether a plaintiff has standing to bring claims on behalf of others for a product that is similar to the product plaintiff purchased. (*Id.*); (Opp'n 9–10.) In this vacuum,

> "[c]ourts . . . have adopted three diverging approaches for analyzing standing to pursue claims for nonpurchased products." Under the first approach, the court dismisses all claims based upon unpurchased products. Under the second "middle ground" approach, the court concludes that substantial similarity between purchased and unpurchased products is sufficient to satisfy Article III requirements as to claims based upon unpurchased products. "In applying the 'substantial similarity' test, Courts look to a series of factors including whether the challenged products are of the same kind, comprised of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling." Finally, under the third approach, the court concludes that as long as a plaintiff has Article III standing to sue for the products that he/she purchased, any questions regarding standing to sue for unpurchased products should be left for resolution at the class certification stage.

*Itzhak*, 2025 WL 2020029, at *6 (citations omitted). Defendant argues that under the first approach, "Plaintiff clearly lacks standing with respect to other SharkNinja products he did not purchase." (Mot. 6.) Defendant also argues that even under the second approach, Plaintiff failed to allege sufficient facts that the other blenders or other Countertop Appliances are substantially similar to the Product. (*Id.* at 7.) Plaintiff argues that "sufficient or substantial similarity between the purchased and non-purchased products satisfies the standing requirement for the non-purchased products." (Opp'n 10 (citing *Figy*

7

*v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1084 (2014).)  Alternatively, Plaintiff argues for the third approach, and maintains that even under the second approach, Plaintiff has standing.  (*Id.*)  In line with other courts in this Circuit, the Court will "defer ruling on the issue until the class certification stage." *See, e.g.*, *Koh v. S.C. Johnson & Son, Inc.*, No. C-09-00927, 2010 WL 94265, at *3 (N.D. Cal. Jan. 6, 2010).

3.  <u>Statutory Standing under the SBA and UCL</u>

Under the SBA, "only a 'buyer of consumer goods who is *damaged* by a failure to comply with any obligation under this chapter or under an implied or express warranty or service contract may bring an action for the recovery of damages and other legal or equitable relief.'" *Itzhak*, 2025 WL 2020029, at *4 (emphasis in original) (quoting Cal. Civ. Code § 1794(a)).  Further, under the UCL, a plaintiff has standing only if he (1) "suffered injury in fact," and (2) "lost money or property as a result of the unfair competition." *Id.* at *6 (quoting Cal. Bus. & Prof. Code § 17204).  "To satisfy the UCL's standing requirements, a plaintiff must: '(1) establish a loss or deprivation of money or property sufficient to qualify as an injury in fact, i.e., economic injury, and (2) show that economic injury was the result of, i.e., caused by, the unfair business practice . . . that is the gravamen of the claim.'" *Id.* (quoting *Kwikset Corp. v. Superior Court*, 246 P.3d 877 (Cal. 2011)).  For the reasons stated above, Plaintiff sufficiently alleges economic injury and damages for purposes of his SBA claim and injury in fact and lost money for purposes of his UCL claim.  *See id.*

4.  <u>Standing to Seek Injunctive Relief</u>

Injunctive relief is unavailable "absent a showing of . . . real or immediate threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111. Plaintiff seeks "preliminary and permanent injunctive relief requiring Defendant to commence warranties for California consumers on the date of delivery, to update its warranty terms contained in its product packaging to comply with California law, and to directly notify Class members of this change." (SAC ¶ 72.)

Defendant argues Plaintiff lacks standing to seek injunctive relief.  (Mot. 12.) Specifically, Defendant argues that "Plaintiff does not allege the existence of a sufficiently imminent injury"; for example, "Plaintiff has not alleged that he intends to continue purchasing SharkNinja products in the future." (*Id.*)  However, Plaintiff argues that he "would purchase Defendant's products in the future should the full warranty be offered." (Opp'n 18 (citing SAC ¶ 70).)  Plaintiff alleges that Defendant's practices "will continue" to mislead consumers in the future.  (SAC ¶ 70.)  Further, Plaintiff alleges there is a "threat of harm to . . . future purchasers because they will not know their true warranty rights," and "will not make warranty claims and will pay for repairs out of pocket believing their warranties have ended." (*Id.* ¶ 72.)  These allegations are sufficient.  Thus, the Court finds Plaintiff has standing for injunctive relief and denies Defendant's motion to dismiss on this ground.

**B. SBA Claim**

1. Request for Judicial Notice and Incorporation by Reference

Defendant requests that the Court take judicial notice of Amazon's public website and polices, titled "Conditions of Use," accessed at https://www.amazon.com/gp/help/customer/display.html?nodeId=508088.   (Mot. 9 & n.1.) Defendant argues that the Court may take judicial notice of Amazon's public website and polices under Federal Rule of Evidence 201(b)(2) because Amazon's policies are "'readily determined' by navigating to Amazon.com and Plaintiff cannot 'reasonably . . . question[]' the accuracy of this website." (*Id.* (citation omitted).)  Alternatively, Defendant argues that because Plaintiff explicitly references "Amazon's terms and conditions" and relies on the language contained within those policies, Amazon's policies, including the Conditions of Use webpage, are incorporated by reference into the SAC.  (*Id.* (citations omitted).)  Plaintiff argues that "Amazon's terms and conditions are outside of the four corners of the [SAC] and should be disregarded." (Opp'n 15.)

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)."  *Khoja v. Orexigen*

25-cv-00535-DMS-KSC

*Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)).  However, two exceptions are judicial notice and incorporation by reference.  *Id.*

A court "may judicially notice a fact that is not subject to reasonable dispute."  Fed. R. Evid. 201(b).  A fact is "not subject to reasonable dispute" if it "is generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  *Id.*  Courts must make this assessment carefully: "[j]ust because [a] document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth."  *Khoja*, 899 F.3d at 999.

Incorporation by reference, by contrast, is a "judicially created doctrine that treats certain documents as though they are part of the complaint itself."  *Id.* at 1002.  A document may be incorporated by reference into a complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."  *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003) (stating that the doctrine of incorporation may apply when a plaintiff's claim about insurance coverage is based on the contents of a coverage plan).  "Whether a document is 'central' to a complaint turns on whether the complaint 'necessarily relies' on that document."  *Price v. Synapse Grp., Inc.*, No. 16-CV-01524, 2017 WL 3131700, at *3 (S.D. Cal. July 24, 2017).  "The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims."  *Khoja*, 899 F.3d at 1002.  While an incorporated document's contents may generally be viewed as true, *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (citations omitted), "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint," *Khoja*, 899 F.3d at 1003.

The Court declines to take judicial notice of the webpage because there is a dispute whether the contract between Plaintiff and Amazon was a shipment or delivery contract. Plaintiff alleges facts is support of a delivery contract, (*see, e.g.*, SAC ¶¶ 14–15), while

25-cv-00535-DMS-KSC

Defendant argues that Amazon's Conditions of Use webpage makes clear Plaintiff entered into a shipment contract, (Mot. 9 (citing *Conditions of Use*).)  The Court will not assume the truth of the information on the webpage, which is the basis of Defendant's request for judicial notice.  As such, the Court declines to take judicial notice of Amazon's Conditions of Use webpage.

The Court also declines to incorporate the webpage by reference.  "For 'extensively' to mean anything . . . it should, ordinarily at least, mean more than once. . . . [A] reference may be sufficiently 'extensive' if a single reference is relatively lengthy." *Khoja*, 899 F.3d at 1003.  Plaintiff refers to Amazon's "term and conditions" once in his Complaint.  (*See* SAC ¶ 15.)  Assuming "term and conditions" refers to Amazon's Conditions of Use, this one allegation is insufficient to incorporate the webpage into the SAC.  Further, the SAC does not necessarily rely on the webpage to state the SBA claim.  Accordingly, the Court will not consider Amazon's Conditions of Use webpage in deciding Defendant's motion to dismiss.

2.  Sufficiency of Pleadings

As noted, the SBA prohibits a "manufacturer, distributor, or retail seller" from making "an express warranty with respect to a consumer good that commences earlier than the date of delivery of the good."  Cal. Civ. Code § 1793.01.  "California law is clear that when the sale of a consumer good results in title passing *outside* of California, the SBA does not apply." *Itzhak*, 2025 WL 2020029, at *3 (emphasis added) (citing Cal. Civ. Code §§ 1792, 1792.1).  Plaintiff alleges the SBA applies because under his purchase contract the Product was sold in California, and thus title passed in California, as Amazon was required to deliver the Product to Plaintiff's home in Chula Vista.  Plaintiff further alleges Defendant violated the SBA because the Product's one-year warranty began on the date of purchase rather than the date of delivery.  Defendant argues the SBA does not apply because the sale of the Product did not occur in California.  (Mot. 8.)

California Commercial Code Section 2401(2)—which determines where title passes for purposes of SBA claims—provides: "[u]nless otherwise explicitly agreed[,] title passes

25-cv-00535-DMS-KSC

to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods . . . even though a document of title is to be delivered at a different time or place." *Galicia v. Country Coach, Inc.*, 324 F. App'x 687, 688–89 (9th Cir. 2009). A sales contract may be either a "shipment contract" or a "delivery contract." *Id.* at 689. A shipment contract "requires or authorizes the seller to send the goods to the buyer, but does not require the seller to deliver them at a specific destination." *Id.* (citing Cal. Com. Code § 2401(2)(a)). Under a shipment contract, "title passes to the buyer at the time and place of *shipment*." *Id.* (emphasis added) (citing Cal. Com. Code § 2401(2)(a)). Conversely, a delivery contract "requires delivery at a specific destination," and "title passes on tender at that *destination*." *Id.* (emphasis added) (citing Cal. Com. Code § 2401(2)(b)). The "presumptive form" of contract under the SBA is a shipment contract. (Mot. 8 (citing *Cal. State Elecs. Ass'n. v. Zeos Int'l Ltd.*, 49 Cal. Rptr. 2d 127, 132 (Ct. App. 1996)).)

Defendant argues that Plaintiff's allegations do not overcome the presumption of a shipment contract, therefore the sale occurred outside California and the SBA does not apply. (*Id.* at 9.) Plaintiff argues he has sufficiently alleged the contract with Amazon required delivery of the Product to his home in California, that he provided his address to Amazon, that he did not contract with any other shipping party, and that he did not pay shipping expenses to Amazon. (SAC ¶¶ 13–15.) Based on these allegation, Plaintiff argues "there is clear evidence to establish that the contract was a deliver contract and to rebut any presumption that the standard form of contract is a shipment contract." (Opp'n 15.)

While a shipment contract is the default category of contract under the SBA, the Court accepts Plaintiff's factual allegations as true at this stage and construes the pleadings in the light most favorable to Plaintiff. In doing so, the Court finds it plausible that Plaintiff entered into a delivery contract, and that the sale occurred in California when Amazon delivered the Product to Plaintiff's home in Chula Vista. Accordingly, Defendant's motion to dismiss for failure to state an SBA claim is denied.

25-cv-00535-DMS-KSC

### C. UCL Claim

#### 1. Equitable Relief

"A plaintiff may not seek equitable relief unless she can demonstrate her legal remedies are inadequate." (Mot. 13 (citing *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 75–76 (1992); *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 843–44 (9th Cir. 2020)).) A plaintiff "must, at a minimum, plead that she lacks adequate remedies at law if she seeks equitable relief." *Obillo v. i-Health Inc.*, No. 24-CV-02459, 2025 WL 844389, at *4 (N.D. Cal. Mar. 18, 2025) (citation omitted).

Here, Plaintiff seeks "preliminary and permanent injunctive relief requiring Defendant to commence warranties for California consumers on the date of delivery, to update its warranty terms contained in its product packaging to comply with California law, and to directly notify Class members of this change." (SAC ¶ 72.) Defendant argues that Plaintiff cannot state a claim for equitable relief under the UCL because "equitable relief is unavailable where legal remedies are adequate." (Mot. 12.) Defendant further argues that Plaintiff has not "sufficiently demonstrated how or why it would be difficult to quantify the damages associated with the purported premature expiration of the warranty." (*Id.* at 14.) However, Plaintiff alleges that legal remedies are inadequate because consumers will not be notified of Defendant's true warranty practices and therefore cannot make claims for monetary damages. (*See* SAC ¶ 72.) Further, pleading in the alternative, including claims for damages under the SBA and for equitable relief under the UCL, is permitted. *See Obillo*, 2025 WL 844389, at *4; *cf. Regions Bank v. Car Wash Mgmt., LLC*, No. 25-CV-00359, 2025 WL 2765231, at *13 (C.D. Cal. Sept. 25, 2025) (explaining "courts have permitted unjust enrichment and breach of contract claims to proceed simultaneously"). Thus, the Court finds that Plaintiff has sufficiently alleged a claim for equitable relief and is not barred from bringing such a claim at this stage.

#### 2. Sufficiency of Pleadings

California's UCL prohibits "unfair competition," which includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading

25-cv-00535-DMS-KSC

advertising."  Cal. Bus. & Prof. Code § 17200.  Consequently, "under the statute 'there are three varieties of unfair competition: practices which are unlawful, unfair or fraudulent.'" *In re Tobacco II Cases*, 46 Cal. 4th 298, 311 (2009) (quoting *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 837 (2006)).  The UCL's "language is 'broad' and 'sweeping' to 'protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.'" *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 985 (9th Cir. 2015) (quoting *Kwikset Corp.*, 246 P.3d at 883).  Plaintiff alleges that Defendant violated the UCL's "unlawful" and "unfair" prongs.  (SAC ¶¶ 65–68.)

### a.  Unlawful Prong

Under the unlawful prong, the UCL "'borrows' violations of other laws and treats them as unlawful practices that the [UCL] makes independently actionable." *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000) (quoting *Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163 (1999)).  Defendant argues that because Plaintiff cannot state an SBA claim, Plaintiff fails to state a claim under the unlawful prong of the UCL, as well.  (Mot. 10.)  However, for the reasons stated above, it is plausible that Defendant violated the SBA by making an express warranty for a consumer good that commences on the date of purchase rather than the date of delivery when the Product was sold in California.  Thus, Plaintiff sufficiently alleges a violation of the UCL under the "unlawful" prong.

### b.  Unfair Prong

The parties agree that under the "unfairness" prong, courts can consider: (1) "whether the challenged conduct is 'tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law'"; (2) whether the practice is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers"; or (3) "whether the practice's impact on the victim outweighs "the reasons, justifications and motives of the alleged wrongdoer." *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214–15 (9th Cir. 2020)

25-cv-00535-DMS-KSC

(citations omitted).  Plaintiff's "unfair" UCL claim is tethered to a statutory provision: the SBA.  (SAC ¶ 66.)  As discussed, it is plausible that Defendant's express warranty commences prior to the date of delivery and that the sale of Plaintiff's Product occurred in California.  If proven, the warranty would violate the SBA.  Further, Plaintiff alleges that Defendant's actions are "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" because "consumers are harmed" for Defendant's benefit and increased profits.  (*Id.* ¶¶ 65–66, 71.)  These allegations plausibly allege a violation of the UCL's "unfair" prong.

## IV.    CONCLUSION

Based on the foregoing, the Court **DENIES** Defendant's motion to dismiss the SAC and **DENIES** Defendant's request for judicial notice.  Defendant will answer the SAC within **fourteen (14) days** of the date of entry of this Order.

**IT IS SO ORDERED.**

Dated:  January 9, 2026

Hon. Dana M. Sabraw
United States District Judge

25-cv-00535-DMS-KSC